UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATHERINE COPELLO and ANNETTE ALLEN, on behalf of themselves and other plaintiffs similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | ) 10 C 7396<br>) |
| vs. | ) Judge Feinerman<br>)<br>) |
| BOEHRINGER INGELHEIM PHARMACEUTICALS INC., | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Catherine Copello filed this lawsuit against her former employer, Defendant Boehringer Ingelheim Pharmaceuticals Inc., alleging that it wrongfully deprived her of overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105 *et seq.* For the IMWL claim, the complaint alleged that Copello could represent a class, to be certified under Federal Rule of Civil Procedure 23, consisting of similarly situated Boehringer pharmaceutical sales representatives ("PSRs") in Illinois. For the FLSA claims, the complaint alleged that Copello could lead a collective action under 29 U.S.C. § 216(b) on behalf of similarly situated Boehringer PSRs nationwide.

Boehringer filed an answer denying that it violated the law and a counterclaim seeking a declaration that its separation agreement with Copello prohibits her from participating in an IMWL class action or an FLSA collective action against the company. Copello's answer to the counterclaim denies that her separation agreement imposes that prohibition. However, in an

effort to hedge her (and/or her counsel's) bets on that issue, Copello simultaneously moved for leave to file an amended complaint naming Annette Allen, another Illinois-based Boehringer PSR, as an additional plaintiff. The court allowed the amended complaint to be filed.

Three motions followed. First, Boehringer moved to dismiss Allen's FLSA claims on the ground, among others, that Allen previously opted into *Ruggeri v. Boehringer Ingelheim Pharmaceuticals Inc.*, No. 3:06-CV-1985 (D. Conn.), a pending FLSA collective action brought by Boehringer PSRs in the District of Connecticut. Second, Plaintiffs moved for conditional certification of an FLSA collective action under § 216(b). Third, Boehringer moved for partial summary judgment on its counterclaim against Copello. Boehringer's motions are granted and Plaintiffs' motion is denied.

## Discussion

### I. Boehringer's Motion To Dismiss Allen's FLSA Claims

The *Ruggeri* action was filed in December 2006 by Boehringer PSRs from Illinois and elsewhere. *See generally Ruggeri v. Boehringer Ingelheim Pharms., Inc.*, 2009 WL 1505580 (D. Conn. May 26, 2009); *Ruggeri v. Boehringer Ingelheim Pharms., Inc.*, 585 F. Supp. 2d 308 (D. Conn. 2008); *Ruggeri v. Boehringer Ingelheim Pharms., Inc.*, 585 F. Supp. 2d 254 (D. Conn. 2008). Represented by Plaintiffs' counsel in this lawsuit, the *Ruggeri* plaintiffs brought claims under FLSA, IMWL, and other state wage laws materially identical to the claims brought here. In February 2008, the *Ruggeri* court entered an order declining supplemental jurisdiction over the state law claims and conditionally certifying a nationwide FLSA collective action under § 216(b). *Ruggeri v. Boehringer Ingelheim Pharms., Inc.*, No. 3:06-CV-1985, Rulings on Defendant's Motion to Dismiss Plaintiffs' Rule 23 Class Allegations and Plaintiffs' Motion for Conditional Certification (D. Conn. Feb. 26, 2008) (reproduced here at Doc. 57-20). Allen filed

a written consent (reproduced here at Doc. 28-1 at 3-4) in November 2008 opting in to the *Ruggeri* collective action. Copello did not opt in.

Boehringer contends that Allen's FLSA claims here should be dismissed as duplicative of her FLSA claims in *Ruggeri*. "As a general rule, a federal suit may be dismissed for reasons of wise judicial administration … whenever it is duplicative of a parallel action already pending in another federal court." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (internal quotation marks omitted); *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("[a]s between federal district courts … the general principle is to avoid duplicative litigation"); *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) ("Federal district courts have the inherent power to administer their dockets so as to conserve scarce judicial resources. … A district court has an ample degree of discretion in deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation.") (internal quotation marks and citation omitted). Allen concedes that her FLSA claims here duplicate those in *Ruggeri*, but she cites *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1234 (7th Cir. 1979), for the proposition that a district court presented with a duplicative case "should consider any special factors counseling for or against the exercise of jurisdiction." Allen notes that if her FLSA claims are dismissed, she still will pursue her IMWL claim here and Boehringer still will have to defend FLSA claims both here and in *Ruggeri*. From this premise, Allen maintains that dismissing her FLSA claims "will produce no gains in judicial efficiency, nor reduce the burden on Defendant of litigating this case." Doc. 53 at 3.

Allen is right that dismissing her FLSA claims would leave FLSA claims pending here (on behalf of Copello) and in *Ruggeri* (on behalf of the opt-in plaintiffs there), and would leave

Allen litigating both here (under IMWL) and in *Ruggeri* (under FLSA). But Allen identifies nothing by way of wise judicial administration or judicial efficiency that would be *gained* by allowing her to pursue her FLSA claims here. She does mention the convenience to her of litigating her FLSA and IMWL claims in the same forum. Allen's submission rings hollow; if Boehringer's answer and counterclaim had not challenged Copello's ability to participate in a class or collective action, Allen almost certainly would not have appeared here as a second plaintiff. Also, if Allen were truly concerned about pursuing her IMWL claims, she would have filed an IMWL suit in Illinois in or shortly after November 2008, when she opted into *Ruggeri* and became aware (either personally or through counsel) that the *Ruggeri* court in February 2008 had declined to exercise supplemental jurisdiction over the IMWL claims filed there. Instead, Allen waited until January 2011, over two years later, to seek redress under IMWL, and then only because counsel feared that a class or collective action might not be possible with Copello as the lone plaintiff.

Even if Allen's personal interests carried any weight, they would matter little in the context of the putative IMWL class action here and the FLSA collective action in *Ruggeri*. To the contrary, because (as shown below) Copello cannot lead an FLSA collective action, dismissing Allen's FLSA claims will ensure that materially identical FLSA collective actions seeking overtime pay on behalf of Boehringer PSRs will not proceed simultaneously in two separate forums, thus avoiding duplicative efforts by two federal district courts and the potential for inconsistent results. It follows that preventing Allen from pursuing duplicative FLSA claims here would advance, not detract from, wise judicial administration. *See Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998) (disapproving duplicative class actions); *Goff v. Menke*, 672 F.2d 702, 704-05 (8th Cir. 1982) (same); *Becker v. Schenley Indus., Inc.*, 557 F.2d 346, 348

(2d Cir. 1977) (same); *Alvarez v. Gold Belt, LLC*, 2011 WL 1337457, at *1-2 (D.N.J. Apr. 7, 2011) (disapproving duplicative FLSA collective actions); *Abushalieh v. Am. Eagle Express, Inc.*, 716 F. Supp. 2d 361, 365-66 (D.N.J. 2010) (same, where the first action was filed almost a year before the second, duplicative action); *Benavides v. Home Depot USA, Inc.*, 2006 WL 1406722, at *1-2 (S.D. Tex. May 19, 2006) (same, where the first action was filed over a year before the second, duplicative action). Accordingly, Allen's FLSA claims are dismissed. *See Central States, Se. & Sw. Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 445 (7th Cir. 2000) ("Outright dismissal [rather than a stay] is most likely to be appropriate when, as in *Serlin v. Arthur Andersen & Co.*, … the same party has filed all of the suits.").

## II. Boehringer's Motion For Partial Summary Judgment Against Copello

When Copello left Boehringer's employ in late October 2009, the parties entered into a Separation Agreement and General Release ("Agreement"). Doc. 11-1. Paragraph 4 of the Agreement entitled Copello to outplacement services and a severance payment of nearly $15,000. Paragraph 5 provides that Copello "understands and agrees that [she] would not receive the severance benefits specified in Paragraph 4 above, without [her] execution of this Agreement and the fulfillment of the promises contained herein." *Id*. at 3. Paragraph 6, entitled "General Release of All Claims and Covenant Not to Sue," provides in pertinent part:

> Employee knowingly and voluntarily waives, releases and forever discharges the Company … of and from any and all claims … which Employee has or may have against Releasees as of the date of the Employee's execution of this Agreement … .
>
> \* \* \*
>
> Employee further waives and gives up any right to become, and promises not to consent to become, a member of any class in a case in which claims are asserted against the Company that are related in any way to Employee's employment or the termination of Employee's employment with the

-5-

>Company. If, without Employee's prior knowledge and consent, Employee is made a member of a class in any proceeding, Employee agrees to opt out of the class at the first opportunity.

*Id*. at 3, 5. Just above the signature block, the Agreement states: "**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS AT LEAST FORTY-FIVE (45) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT**," and "**EMPLOYEE MAY REVOKE EMPLOYEE'S ACCEPTANCE OF THIS AGREEMENT FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DATE EMPLOYEE SIGNS THIS AGREEMENT**." *Id*. at 9.

In its motion for partial summary judgment, Boehringer contends that Paragraph 6 precludes Copello from leading or participating in an IMWL class action or an FLSA collective action. Copello responds that because the provision refers only to a "class," it applies by its terms only to *class* actions, not to *collective* actions. In the alternative, she argues that Paragraph 6 is void as to both collective actions (assuming the provision applies by its terms to collective actions) and class actions. The arguments are considered in turn.

    A.    **Paragraph 6, By Its Terms, Applies To § 216(b) Collective Actions.**

Connecticut law, which governs the Agreement, holds that "a contract is to be interpreted according to the intent expressed in its language." *Levine v. Massey*, 654 A.2d 737, 740 (Conn. 1995). "When the intention conveyed by the terms of an agreement is 'clear and unambiguous, there is no room for construction.'" *Ibid*. (quoting *Gino's Pizza of E. Hartford, Inc. v. Kaplan*, 475 A.2d 305, 307 (Conn. 1984)). Therefore, "[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." *Ibid*. A court construing a contract must "give effect to all the language included therein"

and must avoid "interpreting a contract in a way that renders a provision superfluous." *O'Connor v. City of Waterbury*, 945 A.2d 936, 946 (Conn. 2008). The court "interpret[s] contract language in accordance with the fair and reasonable construction of the written words … accord[ing] [the language's] common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." *Rumbin v. Utica Mut. Ins. Co.*, 757 A.2d 526, 540 (Conn. 2000). "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *O'Connor*, 945 A.2d at 946.

Copello maintains that Paragraph 6 does not prohibit her from participating in a § 216(b) collective action because it refers only to being a "member of a class" or a "member of any class." Copello's premise is that the term "class" is not broad enough to describe the group of individuals opting into a § 216(b) collective action. The premise is not without intuitive appeal, particularly given the differences between the § 216(b) collective action device and the Rule 23 class action device. *See Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 976-78 (7th Cir. 2011); *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010); *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 973 (7th Cir. 1998).

But the premise ultimately is wrong. Because "class" is a legal term of art, its meaning when used in a contract is guided by ordinary usage in the legal field, especially in case law. *See Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-48 (1998); *Europlast, Ltd. v. Oak Switch Sys., Inc.*, 10 F.3d 1266, 1270-71 (7th Cir. 1993); *Gen. Ry. Signal Co. v. Wash. Metro. Area Trans. Auth.*, 875 F.2d 320, 324-25 (D.C. Cir. 1989); *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 195 n.9 (Mich. 1999); *Greenwood v. Stevenson*, 88 F.R.D. 225, 230 (D.R.I. 1980) ("It is well-settled … that when contracting parties use terms of art, they will be deemed to have 'intended' the full legal meaning of those words."); Restatement (Second) of Contracts

§ 202(3)(b) ("technical terms and words of art are given their technical meaning when used in a transaction within their technical field"). As a leading treatise explains, "technical terms and words of art are to be given their technical meaning when used in a transaction within their technical field, and by case law to the effect that where words or terms having a definite legal meaning and effect are knowingly used in a written contract, the parties will be presumed to have intended the words or terms to have their proper legal meaning and effect." 11 Richard A. Lord, *Williston on Contracts* § 31:1 (4th ed. 2011).

As a matter of ordinary usage, the term "class" encompasses a group of individuals opting into a § 216(b) collective action, and the term "class action" encompasses the legal proceedings that follow certification under § 216(b). This usage has consistently been reflected in decisions of the Seventh Circuit, where Copello lives, *see Vanskike v. Peters*, 974 F.2d 806, 812 (7th Cir. 1992) ("class actions are expressly provided for under the FLSA, although they are governed by 29 U.S.C. § 216(b) rather than Federal Rule of Civil Procedure 23"); *Woodall v. Drake Hotel*, 913 F.2d 447, 450 (7th Cir. 1990) ("Under [§ 216(b), a] class action plaintiff must 'opt-in' in order to be bound."); *King v. Bd. of Educ. of the City of Chicago*, 435 F.2d 295, 296 (7th Cir. 1970) ("Plaintiffs … brought this class action to recover overtime wages and corresponding liquidated damages under Section 216(b) of the Fair Labor Standards Act."), of the Second Circuit, where Boehringer is located, *see Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 135 (2d Cir. 2008) (referring to "class of others similarly situated" under § 216(b)); *Kern v. Siemens Corp.*, 393 F.3d 120, 128 (2d Cir. 2004) ("The principal difference between FLSA class actions and Fed. R. Civ. P. 23 class actions is that prospective plaintiffs under the FLSA must consent to join the class."); *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1054-55 (2d Cir. 1990); *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335-36 (2d Cir. 1978)

(referring to "the plaintiff class under the 'opt-in' provision of the Fair Labor Standards Act"), of other circuits, *see Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 388 (9th Cir. 2011); *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 470 (5th Cir. 2010); *Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1127 (10th Cir. 2009); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 & n.36 (11th Cir. 2008); *Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 58 (1st Cir. 2007); *Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 419 (D.C. Cir. 2006); *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003); *Adkins v. Labor, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002); *Anderson v. Unisys Corp.*, 47 F.3d 302, 305 & n.6 (8th Cir. 1995), and of the Supreme Court, *see Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 169 (1989) (referring to "potential members of the class on whose behalf the [§ 216(b)] collective action has been brought").

This understanding of the terms "class" and "class action" is so common that Plaintiffs themselves adopted it. They did so repeatedly in the brief supporting their motion for conditional certification. Doc. 42 at 7 ("The FLSA mandates overtime pay for employees and expressly authorizes class (or 'collective') actions to vindicate this right where the employees at issue are 'similarly situated.' 29 U.S.C. §§ 207, 216(b). Because class members must affirmatively 'opt in' to an FLSA collective action, the Supreme Court has held that named plaintiffs in FLSA class actions may have a court-approved notice sent to all 'similarly situated' individuals with potential claims informing them of the lawsuit and providing them with an opportunity to opt in."), 8 ("equitable tolling is necessary and appropriate to preserve potential class members' rights to pursue their FLSA claims"), 20 ("If a court finds the lenient notice-stage standard is met, the court conditionally certifies the case as a collective action and orders dissemination of notice to potential class members, allowing them an opportunity to

affirmatively opt in by filing written consent."), 20 n.45 ("At this second stage, based on a meaningful record after the completion of discovery, the Court can assess arguments and evidence regarding whether any subgroups of class members have variations regarding their specific job activities or related issues."), 23 ("Boehringer's refusal to provide information on class members or toll the statute of limitations justifies equitable tolling because, though no fault of their own, pharmaceutical representatives have not been provided sufficient knowledge about this lawsuit and their right to opt-in to it."). And they even did so in the draft notice to be sent to PSRs in the event conditional certification were granted. Doc. 41-1 at 5 (defining "COMPOSITION OF THE CLASS"), 6 (referring to "attorneys for the class" and "members of the class"), 6 ("If you choose to join this suit, your interests as a collective action member will be represented by the named plaintiffs through their attorneys, as counsel for the class.").

Because the term "class" in Paragraph 6 undoubtedly encompasses a group of employees opting into an FLSA action under § 216(b), Paragraph 6 prohibits Copello from leading or participating in a collective action here. Were there any doubt as to the meaning of Paragraph 6, it would be eliminated by language stating that Copello "waives and gives up any right to become, and *promises not to consent to become*, a member of any class" in a suit against Boehringer. Doc. 11-1 at 5 (emphasis added).

The phrase "promises not to consent to become" is critical. One does not "consent *to become*" a member of a Rule 23 class. Instead, one *becomes* a member of a class upon certification *without* consenting; at most, a member of a Rule 23(b)(3) class consents to *remain* in the class by not opting out. *See Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004) (contrasting § 216(b) with Rule 23 and noting that "consent of [Rule 23] class members is not required; instead they have a right to be notified of the class action and to opt out

of it and seek their own remedies"); *Am. Reserve Corp. v. Huddleston*, 840 F.2d 487, 493 (7th Cir. 1988) ("A Rule 23 class action is not simply a device by which one plaintiff prosecutes the case after many have filed separate suits …; it is a device by which the representative is an agent for persons who have not appeared or given even tacit consent.") (citing Diane Wood Hutchinson, *Class Actions: Joinder or Representational Device?*, 1983 Sup. Ct. Rev. 459, 497-507)). By contrast, one can join an FLSA collective action only by "consent[ing] to become" a participant. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action *unless he gives his consent in writing to become such a party* and such consent is filed in the court in which such action is brought.") (emphasis added); *Vanskike*, 974 F.2d at 812-13 ("under § 216(b) the class member must opt in to be bound, while under Rule 23 the class member must opt out in order *not* to be bound"). The "consent to become" language in Paragraph 6 would be rendered superfluous, contrary to settled principles of interpretation, if the provision did not cover § 216(b) collective actions. *See Brown v. Sears Holding Mgmt., Corp.*, 2009 WL 2514173, at *3-4 (N.D. Ill. Aug. 17, 2009) (contract in which former employee "waive[s] and give[s] up any right to become, and promise[s] not to consent to become, a member of any class in a case" against former employer waives right to opt into FLSA collective action).

### B. The Paragraph 6 Waiver Is Enforceable.

Because Paragraph 6, by its terms, prohibits Copello from participating in both Rule 23 class actions and § 216(b) collective actions, the question becomes whether it is enforceable.

#### 1. FLSA Does Not Void The Paragraph 6 Waiver As To Collective Actions.

A non-exempt employee's right to overtime pay under FLSA cannot be waived by contract. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Copello

argues that FLSA also prohibits employees from waiving their ability to participate in a § 216(b) collective action. She is incorrect. Courts routinely hold that FLSA does not grant employees the unwaivable right to proceed in court collectively under § 216(b). *See Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 350-51 (4th Cir. 2008); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Adkins*, 303 F.3d at 503; *Horenstein v. Mortg. Mkt., Inc.*, 9 Fed. Appx. 618, 619 (9th Cir. 2001). And the Supreme Court has upheld the validity of contracts to arbitrate disputes under the Age Discrimination in Employment Act, which employs the § 216(b) collective action device. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991). Thus, while FLSA prohibits *substantive* wage and hour rights from being contractually waived, it does not prohibit contractually waiving the *procedural* right to join a collective action.

### 2. State Law Does Not Void The Paragraph 6 Waiver As To Class Or Collective Actions.

Copello maintains that state law renders the Paragraph 6 waiver both procedurally and substantively unconscionable. The parties dispute whether Illinois or Connecticut law governs the unconscionability analysis, with Copello favoring Illinois and Boehringer favoring Connecticut. There is no need to resolve the dispute, as both States apply materially indistinguishable unconscionability standards. *See Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 264, 267 (Ill. 2006) ("Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice. … Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations

and rights imposed by the bargain, and significant cost-price disparity."); *Monetary Funding Grp., Inc. v. Pluchino*, 867 A.2d 841, 848-49 (Conn. 2005) ("The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise. … [T]he basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract."); *Emlee Equip. Leasing Corp. v. Waterbury Transmission, Inc.*, 626 A.2d 307, 312 (Conn. App. 1993) ("Unconscionability generally requires a demonstration of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.") (internal quotation marks omitted). Under these standards, Copello's unconscionability challenges fail.

### a. Procedural Unconscionability

Copello argues that the waiver in Paragraph 6 is procedurally unconscionable because it is "buried in the fine print of a lengthy document" and "was imposed on a take-it-or-leave-it basis." Doc. 85 at 9. Both arguments are without merit.

The waiver is not "buried in fine print of a lengthy document." The relevant language appears on the fourth page of the nine-page Agreement, is set in typeface of ordinary size, and comes under the heading "General Release of All Claims and Covenant Not to Sue." Doc. 11-1 at 3, 5. Nothing in the Agreement indicates that Boehringer sought to hide the waiver from Copello's attention, and no other evidence indicates that anybody reading the Agreement would be unable to find, read, or understand the waiver. To the contrary, the waiver is plain to see, and the Agreement itself gave Copello forty-five days to review the agreement before signing it. The "fine print" argument accordingly fails. *See Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 377 (7th Cir. 1990) (rejecting "fine print" argument where relevant language "can be read

comfortably"); *Montgomery v. Corinthian Colls., Inc.*, 2011 WL 1118942, at *4 (N.D. Ill. Mar. 25, 2011) (in rejecting procedural unconscionability claim, noting that five-page and eleven-page agreements were not "unreasonably long"); *Brown v. Luxottica Retail N. Am. Inc.*, 2010 WL 3893820, at *1, *3-4 (N.D. Ill. Sept. 29, 2010) (rejecting argument that dispute resolution provision in 51-page handbook was "buried"); *see also Smith v. Mitsubishi Motors Credit of Am., Inc.*, 721 A.2d 1187, 1192 (Conn. 1998) ("[W]e hold today that procedural unconscionability cannot be predicated solely on the failure by a commercial party proffering a form contract to an individual party to direct the individual's attention to specific terms of a contractual agreement."); *D'Antuono v. Serv. Road Corp.*, __ F. Supp. 2d __, 2011 WL 2175932, at *16 (D. Conn. May 25, 2011) (in rejecting procedural unconscionability claim, noting that "the Connecticut Supreme Court has soundly rejected the notion that provisions in form contracts are procedurally unconscionable whenever the party with greater bargaining power fails to direct the other party's attention to important provisions"); *compare Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 60-61 (1st Cir. 2007) (class action waiver unconscionable under Massachusetts law where it (a) was sent by email the Tuesday before Thanksgiving and took effect the Monday after Thanksgiving, leaving employees without a fair opportunity to review, (b) was implemented even if employee did not affirmatively accept it, and (c) was "hidden in two paragraphs of a multi-page appendix to a fifteen-page document").

Copello's "take-it-or-leave-it basis" argument fares no better. "Standard-form agreements are a fact of life," and non-negotiable provisions are enforceable. *Oblix v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004); *see also Nw. Nat'l Ins.*, 916 F.2d at 377 ("That the agreement was an adhesion contract—of pre-specified form and not actually negotiated—does not lead to the conclusion that it was unconscionable. … [M]ere non-negotiability or inequality in

bargaining power do[es] not render an adhesion contract's terms unconscionable."); *Zobrist v. Verizon Wireless*, 822 N.E.2d 531, 541 (Ill. App. 2004). Illinois law, which Copello favors, holds that proposing an unfavorable contract provision on a take-it-or-leave-it basis can be procedurally unconscionable only if some other factor is present, such as the provision being hidden in fine print. *See Kinkel v. Cingular Wireless LLC*, 828 N.E.2d 812, 819 (Ill. App. 2005) ("[T]he fact that a contract is offered in a form contract on a take-it-or-leave-it basis does not automatically render a contract term procedurally unconscionable. … [S]omething more is required before we find a provision to be procedurally unconscionable. Illinois courts have long found provisions offered on a take-it-or-leave-it basis *and also* 'hidden in a maze of fine print' to be procedurally unconscionable.") (emphasis added), *aff'd*, 857 N.E.2d 250 (Ill. 2006); *Zobrist*, 822 N.E.2d at 541. As noted above, the Paragraph 6 waiver is not buried in fine print. Accordingly, the fact that the waiver was offered on a "take it or leave it basis" does not render it procedurally unconscionable.

    **b.**  **Substantive Unconscionability**

Copello contends that the waiver is substantively unconscionable because it is "one-sided" and effectively precludes her from seeking relief. Illinois law holds "the enforceability of a class action waiver … must be determined on a case-by-case basis, considering the totality of the circumstances." *Kinkel*, 857 N.E.2d at 275. "Relevant circumstances include the fairness and balance of the contract terms, the presence of unfair surprise, and the cost of vindicating the claim relative to the amount of damages that might be awarded under the [resolution procedures allowed by] the contract." *Ibid*. In the absence of specific precedent from Connecticut reviewing courts, the Connecticut federal court held that a class and collective action waiver is substantively unconscionable under Connecticut law only if it is "one that 'no man in his senses,

not under delusion would make, on the one hand, and which no fair and honest man would accept, on the other.'" *D'Antuono*, 2011 WL 2175932 at *16-17 (quoting *Smith*, 721 A.2d at 1190 (itself quoting an Illinois case, *Neal v. Lacob*, 334 N.E.2d 435, 440 (Ill. App. 1975))).

Applying these standards here is not difficult. With respect to the Connecticut federal court's articulation of the standard, it cannot be said that only a delusional employee would accept, and only an unfair and dishonest employer would offer, a $15,000 severance payment in exchange for, among other things, a class action and collective action waiver leaving the employee free to pursue an individual FLSA claim. The same result holds under the factors articulated by the Illinois Supreme Court in *Kinkel*. With respect to "the fairness and balance of the contract terms," it is not unconscionable to condition a $15,000 severance payment on a class action and collective action waiver—particularly where, as here, the employee remains free to pursue an individual claim she values at greater than $75,000. Doc. 1 at ¶ 11 (original complaint, with Copello as the sole plaintiff, alleges for purposes of establishing diversity jurisdiction over the IMWL claim that "[t]he amount in controversy exceeds seventy-five thousand dollars"). As for "the presence of unfair surprise," there was none; the waiver was set forth in plain English, not fine print, and Copello was given forty-five days to review the Agreement, was advised to consult with a lawyer, and was given seven days to rescind the Agreement after signing. And "the cost of vindicating [Copello's individual] claim relative to the amount of damages that might be awarded" is not prohibitive. Copello seeks tens of thousands of dollars in damages, and § 216(b) "mandates that courts award a 'reasonable attorney's fee' to prevailing plaintiffs." *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 406 (7th Cir. 1999); *see* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the

defeendant, and costs of the action."). The magnitude of Copello's claimed damages, together with the attorney fee provision, leaves Copello eminently capable of attracting counsel to help vindicate her individual claims.*

For these reasons, the class action waiver in Paragraph 6 of the Agreement is not substantively unconscionable. *See Adkins*, 303 F.3d at 503; *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638-39 (4th Cir. 2002); *Brown*, 2009 WL 2514173, at *4 ("Brown remains able to pursue the full pay for the work that she performed for Sears, plus liquidated damages, attorneys' fees, and costs if she is able to prove that Sears violated the FLSA, so her FLSA rights are not affected by her inability to litigate via a class action. Consequently, we disagree that Brown could not as a matter of law waive her ability to bring a class action under the FLSA."); *D'Antuono*, 2011 WL 2175932 at *16; *Pomposi v. GameStop, Inc.*, 2010 WL 147196, at *6-11 (D. Conn. Jan. 11, 2010).

\* \* \*

Because Paragraph 6, by its terms, waives Copello's right to lead or participate in a Rule 23 class action or a § 216(b) collective action, and because the waiver is neither invalid nor

---

* Copello asserts that "it would be difficult [in the Northern District of Illinois] for an employee with only an individual FLSA or overtime claim to find counsel because such individual claims are usually too small to merit the time and expense of litigation by counsel in that market," and that "[i]ndividuals will not file stand-alone FLSA actions to recover lost wages due to failure to pay overtime because the amount at issue is too small to justify the risk of litigation." Doc. 87 at ¶¶ 7, 14. Given FLSA's attorney fee provision, there is reason to question those assertions. *See, e.g., Verkuilen v. MediaBank, LLC*, __ F.3d __, 2011 WL 2084074 (7th Cir. May 27, 2011) (single-plaintiff FLSA case where collective action status not sought); *Barth v. Champion Roofing Inc.*, 2011 WL 2395555 (N.D. Ill. June 10, 2011) (same); *Kryiakoulis v. DuPage Health Ctr., Ltd.*, 2011 WL 2420201 (N.D. Ill. June 9, 2011) (same). The issue need not be resolved here, however, because Copello's assertions are plainly wrong as to employees who, like her, seek recoveries in the high five figures or greater.

unenforceable under FLSA and state law, Boehringer's motion for partial summary judgment on its counterclaim against Copello is granted.

## III. Plaintiffs' Motion To Conditionally Certify An FLSA Collective Action

An FLSA collective action under § 216(b) may not proceed without a plaintiff to lead it. *See In re Family Dollar FLSA Litig.*, 637 F.3d 508, 519 (4th Cir. 2011) ("Because we have affirmed summary judgment dismissing [plaintiff's] complaint on the merits, we need not address whether the district court properly refused to certify her action as a collective action. Without a viable claim, [plaintiff] cannot represent others whom she alleged were similarly situated."); *White v. Baptist Mem'l Health Care Corp.*, 2011 WL 1883959, *5 (W.D. Tenn. May 17, 2011) ("Where a named plaintiff's FLSA claim has failed, she cannot represent others whom she alleged were similarly situated."). Because Allen's FLSA claim is dismissed and Copello cannot pursue an FLSA collective action, there is no plaintiff who could fill that role. Accordingly, Plaintiffs' motion to conditionally certify an FLSA collective action is denied.

## Conclusion

For the foregoing reasons, Boehringer's motion to dismiss Allen's FLSA claims is granted, as is its motion for partial summary judgment against Copello. Allen's FLSA claims are dismissed, and Copello may not participate in an FLSA collective action or an IMWL class action against Boehringer. Plaintiffs' motion to conditionally certify an FLSA collective action is denied. The following claims remain for disposition: (1) Copello's and Allen's IMWL claims,

for which only Allen can be put forth as a class representative if and when Rule 23 certification is sought; and (2) Copello's FLSA claims, which can proceed only on an individual basis.

August 2, 2011

_____
United States District Judge